IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIMBERLY WELLS | : | CIVIL ACTION |
| | : | |
| v. | : | No. 15-5675 |
| | : | |
| RETINOVITREOUS ASSOCIATES, LTD. | : | |
| | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                **June 21, 2016**

      Plaintiff Kimberly Wells brings this action against Defendant Retinovitreous Associates, Ltd., her former employer, alleging retaliation in violation of the Americans with Disabilities Act (ADA), the Pennsylvania Human Relations Act (PHRA), and the Family and Medical Leave Act (FMLA).[1] Defendant moves for summary judgment on all counts of Plaintiff's Complaint. Because Plaintiff does not establish a prima facie case of retaliation, or proven Defendant's proffered reason for the adverse employment actions were pretextual, Defendant's Motion will be granted. Plaintiff's Complaint will be dismissed.

**FACTS**[2]

      Plaintiff worked for Defendant as an Ophthalmic Technician at its Wills Eye Hospital office in Philadelphia, Pennsylvania, for almost four years, from August 2011 until her termination in July 2015. In January 2013, Plaintiff was diagnosed with Multiple Sclerosis (MS). The next month, Plaintiff informed Defendant of her diagnosis and, as a result, she would require

---

[1] In her Complaint, Plaintiff also alleged discrimination under the ADA and PHRA but has voluntarily waived those claims. *See* Opp'n to Mot. for Summ. J. at 1 n.1.

[2] "On a motion for summary judgment, a district court must view the facts in the light most favorable to the non-moving party, and must make all reasonable inferences in that party's favor." *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

FMLA leave, which she took intermittently until October 17, 2014. On February 2, 2015, Plaintiff filed a lawsuit against Defendant asserting FMLA, ADA, and PHRA violations, alleging failure to accommodate, hostile work environment, and retaliation claims related to her requests for FMLA leave.[3]

On March 2, 2015, twenty days after Plaintiff filed her lawsuit against Defendant, she received a "verbal written warning"[4] for failing to follow proper inventory management procedures when preparing medication for a patient's injection. Later that month, on March 20, 2015, Plaintiff received a written warning for failing to properly document three injections. On April 20, 2015, Plaintiff was suspended for three days for gross misconduct because she prepared a patient's incorrect eye for a procedure. On May 1, 2015, Plaintiff received a final written warning for failing to follow the proper procedure for verifying a patient's insurance information prior to administering an injection. Plaintiff was terminated on July 10, 2015, for again failing to follow the inventory management procedures for administering medication—the same basis for her March 2, 2015, verbal written warning.

**DISCUSSION**

A motion for summary judgment shall be granted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those "that might affect the outcome of the suit

---

[3] This Court presided over Plaintiff's previous action against Defendant. On September 18, 2015, the parties stipulated to dismissing the action with prejudice. *See* Stipulation of Dismissal, *Wells v. Retinovitreous Assocs. Ltd.*, No. 15-478 (E.D. Pa. Sept. 18, 2015).

[4] Defendant's disciplinary protocol contains various levels of discipline, including verbal counseling, warnings, suspension, demotion, transfer, and termination. Further, Defendant furnished Plaintiff with documentation relating to verbal written warnings, written warnings, suspension, and termination, which provided the basis for disciplinary action. Prior to filing the lawsuit against Defendant, Plaintiff had received two verbal written warnings. *See* Mot. for Summ. J. Exs. J & K.

under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." *Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000) (citing *Sterling Nat'l Mortg. Co. v. Mortg. Corner, Inc.*, 97 F.3d 39, 45 (3d Cir. 1996), *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995), and *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, AFL-CIO*, 982 F.2d 884, 890 (3d Cir. 1992)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether to grant summary judgment, the court "must view the facts in the light most favorable to the non-moving party, and must make all reasonable inferences in that party's favor." *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

Plaintiff's retaliation claims under the FMLA, ADA, and PHRA are all analyzed under the *McDonnell Douglas* burden-shifting framework. *See Budhun v. Reading Hosp. & Med. Ctr.*, 765 F. 3d 245, 256 (3d Cir. 2014) (applying *McDonnell Douglas* to FMLA retaliation claims); *Williams v. Phila. Housing Auth. Police Dept.*, 380 F.3d 751, 760 (3d Cir. 2004) (applying *McDonnell Douglas* to ADA retaliation claims); *see also Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (applying *McDonnell Douglas* to PHRA retaliation claims). The *McDonnell Douglas* analysis proceeds in three stages: (1) Plaintiff must establish a prima facie case of retaliation; (2) if Plaintiff establishes her prima facie case, the burden then shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the adverse action; and (3) if Defendant articulates a nondiscriminatory reason, then the burden shifts back to Plaintiff to

prove by a preponderance of the evidence that Defendant's proffered reason is a pretext for retaliation. *See, e.g.*, *Williams*, 380 F.3d at 760 n.3.

At the first stage, the Court must analyze whether Plaintiff has established a prima facie case of retaliation; that is, (1) she engaged in protected activity, (2) she subsequently or contemporaneously suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (setting forth ADA retaliation standard); *Budhun*, 765 F.3d at 256 (setting forth FMLA retaliation standard); *see also Daniels*, 776 F.3d at 193 (setting forth PHRA retaliation standard).

The parties do not dispute that Plaintiff engaged in protected activity when filing her prior lawsuit against Defendant alleging FMLA, ADA, and PHRA violations. Nor do the parties dispute that Plaintiff was subject to adverse employment actions, including her April 20, 2015, three-day suspension and July 10, 2015, termination.[5]

The parties contest whether Plaintiff has established a causal connection between her prior lawsuit and the subsequent adverse actions. Whether a causal connection exists "must be considered with a careful eye to the specific facts and circumstances encountered." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 n.5 (3d Cir. 2000). To demonstrate a causal connection, a plaintiff generally must show "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of

---

[5] At oral argument, Plaintiff suggested the first adverse action against Plaintiff was the March 2, 2015, verbal written warning. An adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." *Newsome v. Admin. Office of the Courts of the State of N.J.*, 51 F. App'x 76, 79 (3d Cir. 2002) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 749 (1998)). Plaintiff has not offered evidence that the warnings she received prior to being suspended changed her employment status or caused a significant change in benefits. The Court, therefore, does not find these warnings amount to adverse employment actions.

antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir. 2007).

Plaintiff does not argue the existence of unduly suggestive temporal proximity to establish a causal connection. Indeed, the April 20, 2015, three-day suspension, occurring over two months after she initiated the previous lawsuit, and July 10, 2015, termination, occurring almost five months after she initiated the previous lawsuit, both fall beyond the period typically found by courts in this Circuit to be unduly suggestive. *See, e.g.*, *Williams*, 380 F.3d at 760 (finding two months between protected activity and adverse employment action not unduly suggestive); *see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 307 (3d Cir. 2012) (collecting cases finding unduly suggestive temporal proximity ranging from two days to three weeks).

Instead, Plaintiff argues a causal connection exists here, as the discipline she received coupled with the lawsuit constituted a pattern of antagonism. Where "there is a lack of temporal proximity, circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference." *Kachmar v. SunGuard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997). A pattern of antagonism is gleaned from looking at the record as a whole and has been found where an employee is subject to a "constant barrage of written and verbal warnings" and "disciplinary action, all of which occurred soon after plaintiff's initial complaints and continued until his discharge," *Robinson v. Se. Pa. Transp. Authority*, 982 F.2d 892, 896 (3d Cir. 1993), or is subject to "[r]epeated violations for trivial matters and unusually close supervision" following protected action, *Young v. J.B. Hunt Transport, Inc.*, No. 11-5518, 2013 WL 526814, at *4 (E.D. Pa. Feb 13, 2013). A pattern of antagonism, however, is more than a series of disciplinary actions; a plaintiff must "offer [a] basis for linking the disciplinary actions to her

[protected activity]." *Barton v. MHM Correctional Servs., Inc.*, 454 F. App'x 74, 79 (3d Cir. 2011) (citing *Robinson*, 982 F.2d at 896).

Here, Plaintiff does not dispute the underlying conduct giving rise to Defendant's warnings and adverse employment actions. Instead, she contends the disciplinary actions are retaliatory because she received warnings after the lawsuit for workplace violations that previously went unwarned. Plaintiff specifically argues that prior to the lawsuit she did not receive warnings when she failed to follow the procedures giving rise to the March 2, 2015, and March 20, 2015, warnings. Even viewing the facts in the light most favorable to the Plaintiff, she does not establish a link between the adverse employment actions and her lawsuit. Plaintiff offers no evidence she engaged in gross misconduct prior to the lawsuit which would have resulted in suspension but went unwarned. Furthermore, after being suspended, Plaintiff received a final written warning for failing to verify a patient's insurance information prior to administering an injection, a violation she does not suggest she had committed prior to the lawsuit, and was subsequently terminated for committing the same violation for which she had received the March 2, 2015, warning. In these circumstances, the Court finds there is insufficient evidence establishing a pattern of antagonism.

For the same reasons, the Court finds the evidence as a whole does not establish a causal link between Plaintiff's filing of a lawsuit and subsequent adverse employment actions. *See Daniels*, 776 F.3d at 196 (noting that a causal link may be established by "the circumstances as whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action"). She has thus failed to make out a prima facie case of retaliation.

Even if Plaintiff could make out a prima facie case, Defendant has produced a legitimate, nondiscriminatory reason for its adverse employment actions: Plaintiff's repeated violations of Defendant's workplace policies and procedures. Plaintiff's argument for pretext is identical to her argument to establish her prima facie case. *See Farrell*, 206 F.3d at 286 (acknowledging that the same evidence may be probative for establishing both causation in a prima facie case and pretext). For the same reasons the Court finds Plaintiff has not establish her prima facie case, the Court finds she has not given the Court reason to "either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 324 (3d Cir. 2014).

Defendant's Motion for Summary Judgment will therefore be granted. An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.